IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| Optowave Co., Ltd., </br></br>          Plaintiff </br></br> vs. </br></br> Dmitri G. Nikitin, an individual, </br> d/b/a Precision Technology Group, </br></br>          Defendant | Case No.: 6:05-CV-1083-Orl-22DAB |

**SUPPLEMENTAL MOTION TO COMPEL DISCOVERY AND
INCORPORATED MEMORANDUM OF LAW**

On June 20, 2006, Plaintiff, Optowave Co., Ltd. ("Optowave"), moved that this Court enter an order compelling Defendant, Dmitri G. Nikitin, d/b/a Precision Technology Group ("Nikitin"), to (1) produce requested documents, including electronic documents and emails; (2) provide complete and satisfactory answers to Plaintiff's Interrogatories; and (3) identify individuals not disclosed in the Defendant's Answers to Plaintiff's Interrogatories, nor in Defendant's Fed. R. Civ. P. 26(a)(1) disclosures.  Since the filing of its Motion to Compel Discovery, Optowave has learned of additional discovery abuse on the part of Nikitin, including the destruction of evidence, and in support of its motion further states:

1. On June 20, 2006, Optowave filed a Motion to Compel Discovery in the above-styled cause.

2. This Supplemental Motion incorporates by reference all the allegations contained therein.

3. On June 20, 2006, Optowave conducted a deposition of Stefan Tudor, former Executive Vice President of Sales for Defendant, in Minneapolis, Minnesota.

4.      In his deposition, Mr. Tudor testified that he communicated regularly by email with Defendant and Defendant's other employees during the time of his employment with Defendant Nikitin, including the time he was involved in the sale of Defendant's equipment to Optowave.

5.      Optowave possesses its own copies of numerous emails from Mr. Tudor, reflecting communications between the two companies from July 2004 to December 2004.

6.      However, Defendant had failed to produce its internal or external emails, including Defendant's internal emails as well as emails with third parties related to Optowave, as requested in Optowave's Request to Produce Documents, dated October 25, 2005.  See EXHIBIT A.

7.      At the eleventh hour, literally minutes before Mr. Tudor's deposition was about to start, Defendant's attorney advised Optowave's attorney that Defendant had "found" a handful of emails between Mr. Tudor and Optowave that he would be submitting as exhibits at Mr. Tudor's deposition.  See EXHIBIT B.

8.      These exhibits were faxed to Optowave's attorney during the middle of Mr. Tudor's deposition.

9.      The handful of emails between Mr. Tudor and Optowave produced at Mr. Tudor's deposition are a small subset of those already possessed by Optowave, and cannot comprise all of Defendant's internal and external communications related to Optowave.

10.     Included in these exhibits was one (1) internal email from Dmitri Nikitin to his employees related to a demand letter from Optowave's legal counsel.  See EXHIBIT B.

11.     On June 22, 2006, Optowave resumed the deposition of Dmitri G. Nikitin that had been adjourned on June 9, 2006.  The transcript of Mr. Nikitin's June 22, 2006 deposition has yet

to be delivered. Optowave will provide this Court with page and line transcript references when the deposition transcript is provided.

12. In his deposition, Nikitin testified that he was aware of and familiar with Optowave's Request to Produce Documents, dated October 25, 2005.

13. Nikitin also stated that he possesses emails related to Optowave that he has yet to produce, in spite of Optowave's Request to Produce Documents.

14. Nikitin also stated that he possesses purchase orders and/or prior contracts requested in Optowave's Request to Produce Documents.

15. To date, Nikitin has failed to produce any of his emails – save the one produced during the middle of Mr. Tudor's deposition – related to Optowave, nor has he produced any of his purchase orders or prior contracts.

16. At his deposition, Nikitin did not provide any explanation as to why he has failed to produce such documents.

17. Nikitin also testified that following Mr. Tudor's termination in the spring of 2005, Mr. Tudor's computer hard drive containing his emails was erased.

18. Yet, Mr. Nikitin was able to produce a very few emails that had been sent to Mr. Tudor and not copied to Mr. Nikitin from his records. Mr. Nikitin's explanation was that a portion of the Microsoft Outlook files from Mr. Tudor's email system may have been copied to his hard drive.

19. Optowave submits that this explanation is incredible. To suggest that from a number of emails that exist, someone copied one or two emails and moved just those emails to Mr. Nikitin's computer stretches credulity to its breaking point.

20. Further, Mr. Nikitin indicated that his emails were saved onto a CD-R disc, yet that CD-R disc and its emails have never been produced. After his deposition, Nikitin contended that no CD-R disk exists.

21. In addition, Nikitin stated that the hard drives of other terminated employees – including those with emails potentially related to the present controversy such as Richard Whitenack, Brian McNeill, Colin Nolan, and Monica Correal – were erased as a normal business practice even though the erasure occurred after Nikitin was on notice of the claim of Optowave.

22. Optowave's legal counsel, Robert Choo, sent a demand letter to Defendant on or about November 17, 2004, informing him of the commencement of legal proceedings related to the present controversy. See EXHIBIT C.

23. On or about May 9, 2005, Carolyn Salzmann of Akerman Senterfitt sent a letter by certified mail to Defendant informing him of her engagement in this matter, along with a Notice of Non-Destruction. See EXHIBIT D.

24. It is Optowave's belief and contention that Defendant's actions in erasing company emails *after* notice of the claims between the parties and *after* delivery of a notice requesting electronic documents to be preserved is spoliation of evidence.

25. At issue in this case is whether, under the parties' agreement, the manufacturer was required to deliver two machines that could produce a product subject to very narrow (micron) tolerances.

26. Mr. Nikitin contends that the product was solely the responsibility of the buyer, Optowave. Optowave contends, and the deposition of Mr. Tudor supports, that Nikitin was responsible for delivering machines that could produce the product desired by Optowave.

27. The internal emails between Nikitin and his employees as well as the emails from Tudor to other company employees are highly relevant to demonstrate that the interpretation of the contract advanced by Optowave is correct.

28. Optowave believes that the only rationale explanation for the failure to produce the emails and for their apparent destruction is that these emails would support Optowave's position in this litigation.

29. Nikitin also testified that some time in the spring of 2006, his company was victimized by computer hacking on the part of Matthew DeCourcey, a contractor who had been hired to manage and maintain Defendant's computer servers.

30. Nikitin stated that police officers were called to his company when the alleged hacking was discovered, and that he possesses a copy of the police report and other documents related to an alleged criminal investigation.

31. In spite of repeated promises to Optowave's attorneys, Defendant failed to timely provide Optowave with a copy of the police report and any related documents until after the discovery cutoff, effectively precluding any ability to inquire, absent the granting of this motion.

32. On June 23, 2006, Optowave resumed the deposition of Eugen Kayzerman, Field Service Engineer for Defendant, that had been adjourned on June 8, 2006. The transcript of Mr. Kayzerman's June 23, 2006 deposition has yet to be delivered. Optowave will provide this Court with page and line transcript references when the deposition transcript is provided.

33. Mr. Kayzerman testified that he possesses additional handwritten notes documenting the results of system testing at Optowave's facilities, while he was installing Defendant's equipment in Korea from October 25, 2004 to November 13, 2004.

34. Mr. Kayzerman provided no explanation as to why these notes have not been produced to Optowave other then he made the decision that they were unnecessary, and he testified that he simply was unaware of the need to do so in response to Optowave's Request to Produce Documents.

35. On June 23, 2006, Optowave resumed the deposition of Cathy Weaver, Human Resources Manager for Defendant, that had been adjourned on June 8, 2006. The transcript of Mrs. Weaver's June 23, 2006 deposition has yet to be delivered. Optowave will provide this Court with page and line transcript references when the deposition transcript is provided.

36. Ms. Weaver testified that she was present at the time the police were called to Defendant's company as a result of Mr. DeCourcey's alleged computer hacking.

37. Ms. Weaver also testified that to her knowledge, at least four (4) of Defendant's employees had their email files erased as a result of Mr. DeCourcey's alleged actions.

38. Ms. Weaver refused to confirm the identities of two of the four employees whose email files had been "lost," including the possibility that one such person was Defendant, Dmitri G. Nikitin.

39. Ms. Weaver failed to provide a copy of the police report, nor did she furnish an employment file or any contact information for Mr. DeCourcey, as requested by Optowave.

40. Ms. Weaver stated that during the time of Mr. DeCourcey's service managing Defendant's computer servers, which lasted for approximately one year, she would have to call Mr. DeCourcey frequently for computer maintenance and/or service issues, sometimes on a weekly basis.

41. However, Ms. Weaver failed to provide or recall any contact information for Mr. DeCourcey.

**MEMORANDUM OF LAW**

Federal district courts possess the inherent power to regulate litigation and to sanction litigants for abusive practices. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980)(citing *Link v. Wabash R. Co.*, 370 U.S. 626 (1962); *see also*, *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). It is well settled that this Court has the authority to sanction a party who spoliates relevant and discoverable evidence. *See, e.g.*, *Flury*, 427 F.3d at 943; *Banco Latino v. Gomez Lopez*, 53 F.Supp.2d 1273, 1277 (S.D. Fla. 1999); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D. Fla. 1987). In diversity suits within the Eleventh Circuit, federal law governs the imposition of spoliation sanctions. *Flury*, 427 F.3d at 944.

Although the Eleventh Circuit has yet to provide a specific rule for the spoliation of electronic information, it has long been the rule in this Circuit that an adverse inference should be drawn from a party's failure to preserve evidence when the absence of that evidence is predicated on bad faith. *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)(citing *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)). Other courts have provided a similar bad faith rule specifically for spoliation of electronic information.[1] In the leading case of this emerging area of law, *Zubulake v. UBS Warburg LLC*, Judge Sheindlin held that a party seeking an adverse inference for spoliation of electronic evidence must show:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind;" and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

229 F.R.D. 422, 430 (S.D.N.Y. 2004)(sanctioning defendant for the deletion of emails and providing an adverse inference instruction to the jury). Other courts have applied similar rules

---

[1] The American Bar Association has prepared an excellent overview of electronic spoliation. *See* Steven A. Weiss, *Do Not Delete*, 13 A.B.A. Committee on Pretrial Practice & Discovery 2 (2005), *available at* http://www.abanet.org/litigation/committees/newsletter_gratis/ppandd_pretrial.pdf.

and awarded similar relief, contributing to the growing body of case law in which parties have been sanctioned for deficiencies in production of electronic information.[2]

In the present case, under both the Eleventh Circuit's general rule and the specific rule for spoliation of electronic information employed in other courts, this Court should grant an adverse inference of liability against Defendant Nikitin for spoliation of electronic information. Defendant clearly had an obligation to preserve company emails after the commencement of legal proceedings and receipt of a notice to preserve electronic information. *Flury*, 427 F.3d at 944-45; *Zubulake*, 299 F.R.D. at 430. Defendant was aware of the commencement of legal proceedings since November 17, 2004. See EXHIBITS B and C. Moreover, Defendant was specifically on notice that he should preserve all electronic information since on or about May 9, 2005. See EXHIBIT D. Yet, *after* Defendant had notice of the claims between the parties and *after* the delivery of a specific notice to preserve electronic information, Defendant destroyed company emails. Such destruction, after clear notice of both the general suit and specifically electronic spoliation, clearly evinces bad faith and a culpable state of mind. *Bashir*, 119 F.3d at 931; *Zubulake*, 299 F.R.D. at 430. These emails are highly relevant to the issue of whether Defendant was required to deliver two machines designed to meet Optowave's very narrow tolerances for the production of cellular-phone camera lenses. *Zubulake*, 299 F.R.D. at 430. Indeed, these emails very likely discussed the specifications for the machines required in the

---

[2] *See, e.g.*, *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002)(imposing sanctions for party's negligent delay in producing digital information); *Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 348 F.Supp.2d 332 (D.N.J. 2004)(granting spoliation inference and monetary sanctions where defendant knew that emails were potentially relevant to litigation and knew how to stop spoliation of the emails, yet allowed their destruction); *Rumbus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 283 (E.D. Va. 2004)(extending crime/fraud exception to attorney-client privilege and work product doctrine to materials and communications created for planning or in furtherance of spoliation); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 231 (S.D.N.Y. 2003)(granting plaintiff's motion for judgment as to liability where defendants and their counsel engaged in discovery abuse); *Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622, 632 (D. Utah 1998)(sanctioning party $10,000 for failure to search or preserve the emails of its five employees having relevant information), *aff'd in relevant part*, 222 F.3d 1262 (10th Cir. 2000); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 169 F.R.D. 598, 616-17 (D.N.J. 1997)(imposing $1,000,000 fine and ordering defendant to initiate comprehensive document retention plan and to distribute it to all its employees).

contract and are critical to an interpretation of that document. *Id*. Finally, the absence of these emails and the circumstances surrounding their destruction can only be the result of bad faith on the part of the Defendant. *Bashir*, 119 F.3d at 931. Defendant Nikitin has admitted that the emails existed, indeed that some were supposedly even saved on a CD-R disc which Defendant has yet to produce and now claims does not have, but that the hard drives of employees were deliberately erased as part of a normal business practice. *Id*. Such willful destruction was clearly done in bad faith. *Id*. Accordingly, because of Defendant's purposeful spoliation of highly relevant emails and possibly other electronic information, this Court should sanction defendant and grant an adverse inference as to liability.

WHEREFORE, Plaintiff requests the Court to further order Defendant to:

(1)   Produce all documents – including but not limited to all of Defendant's emails, purchase orders and prior contracts – that have yet to be produced in response to Plaintiff's Request to Produce Documents;

(2)   Produce all documents that were not produced at the Deposition Duces Tecum of Defendant's Corporate Representative on June 9, 2006;

(3)   Produce all of Eugen Kayzerman's notes and other documents related to the testing, installation and maintenance of the System;

(4)   Produce complete and accurate contact information for Matthew DeCourcey;

(5)   Produce, to the extent not already produced, all documents related to the criminal investigation of alleged computer hacking at Defendant's company, including but not limited to the police report identifying the officers conducting such alleged investigation;

(6)     Enter an order determining that Nikitin and PTG are prohibited from introducing any testimony that the machines complied with the terms and specifications of the contract as contended by them;[3]

(7)     Award reasonable expenses, including attorney's fees, to Plaintiff incurred as a result of making this motion; and

(8)     Specify appropriate sanctions for further failures on the part of Defendant to comply with an order issued by this Court compelling discovery, under Fed. R. Civ. P. 37 and/or 28 U.S.C. § 1927.

    /s/ James E. Foster_____
James E. Foster
Fla. Bar 0142015
Carolyn M. Salzmann, Esq.
Florida Bar No.:  497118
Akerman Senterfitt
420 S. Orange Avenue
12th Floor
Orlando, FL 32801
Tel:  (407) 843-7860
Fax:  (407) 843-6610
   Counsel for Plaintiff

---

[3] Optowave recognizes that the effect of such an order would result in a finding of liability in favor of Optowave and against Nikitin. Optowave believes that the evidence obtained during discovery as well as a reading of the contract supports such a result. Optowave intends to file a motion for summary judgment advancing its position that there is no material fact as to Nikitin's liability pursuant to the contract.

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by e-mail this 2nd day of July, 2006 to: James LaVigne, Esq., 7057 Grand National Drive, Suite 100, Orlando, FL 32811.

      /s/ James E. Foster
    James E. Foster Esq.