# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**OPTOWAVE CO., LTD,**

**Plaintiff,**

**-vs-** **Case No. 6:05-cv-1083-Orl-22DAB**

**DMITRI G. NIKITIN, an individual, d/b/a PRECISION TECHNOLOGY GROUP,**

**Defendant.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO AMEND/CORRECT JUDGMENT TO ALLOW DISPOSITION OF EQUIPMENT (Doc. No. 201)** |
| **FILED:** | **October 15, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and denied in part**.

| | |
|---|---|
| **MOTION:** | **MOTION TO ENFORCE SETTLEMENT AGREEMENT (Doc. No. 202)** |
| **FILED:** | **October 15, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and denied in part**.

**MOTION:** **AMENDED MOTION FOR WRIT OF GARNISHMENT (AFTER JUDGMENT) (Doc. No. 191)**

**FILED:** **July 7, 2008**

---

**THEREON** it is **RECOMMENDED** that the motion be **DENIED without prejudice** subject to reassertion within ten days of the conclusion of the Recommendations listed below.

Plaintiff Optowave Co., Ltd. ("Optowave") sued Defendant Dmitri Nikitin for breach of contract arising out of a dispute over the sale of equipment used to manufacture infrared glass filters. The parties contracted for the sale of a scribing machine and a breaking machine that Optowave planned to use in manufacturing infrared glass filters to be used in cell phone cameras produced by manufacturers such as Samsung, Optowave's principal customer. The case went to trial and an Amended Judgment was entered on May 10, 2007 awarding Optowave a judgment of $441,414.65 (with interest) and pre-judgment interest of $87,474.98, plus costs. Doc. No. 155. Nikitin was granted until Monday, July 9, 2007 to take possession of the scribing machine and breaking machine. Doc. No. 154. Both parties appealed the Court's decision, and the orders requiring Optowave to surrender possession of the machines were stayed pending resolution of the appeal. Doc. Nos. 158, 159.

On October 3, 2007, the parties notified the Court they had reached a settlement at an appellate mediation, which mooted the issue of sanctions for spoliation. Doc. No. 183. The Eleventh Circuit dismissed the appeal. Doc. No. 185. Eight months later, on June 23, 2008, Optowave filed its Renewed and Refiled Motion for attorneys' fees and costs on the spoliation issue. Doc. No. 187. Following briefing by the parties[1] and an evidentiary hearing on November 17, 2008, the Court finds

[1]The parties filed Responses. *See* Doc. No. 204, 205.

that there was a substantial breakdown as to security for the payment terms and return of the equipment as agreed to in the parties' Settlement Agreement dated September 27, 2007. Pl. Ex. 1.[2]

To sum up the basic terms of the Settlement Agreement, the parties had agreed that Nikitin would pay a total amount of $505,000 and could take custody of four pieces of equipment – the scribing and breaking machines in the original suit and two other machines that Optowave did not need because they worked in conjunction with them – the expander and the laminator. For purposes of security and obtaining letters of credit, the agreement placed a value of $280,000 on the four pieces of equipment. The equipment plainly is of greater value to Nikitin than it is to Optowave.

## *I. MODIFYING THE JUDGMENT OR ENFORCING THE SETTLEMENT AGREEMENT*

Evidence presented at the hearing showed that Nikitin had paid to Plaintiff (or its counsel) $65,000 toward the $505,000 total. Nikitin had also deposited to the trust account of his own counsel, Ernest Myers, Esq., approximately $196,000[3]. Thus, Nikitin has paid or posted approximately one-half of the total amount required in the settlement, $261,875, but has received none of the machines for various reasons. There were disputes over whether sufficient information had been provided to Nikitin to complete the letters of credit[4] required by the Settlement Agreement, whether Nikitin had provided sufficient forms of the letters of credit to Optowave, whether Nikitin was timely as to monthly payments, and whether Optowave had denied Nikitin access to the equipment to pack and crate it for shipping.

[2]Reference is to the exhibits filed at the hearing. *See* Doc. Nos. 211, 212.

[3]This amount is an accumulation of monthly payments required under the original Settlement Agreement as well as amounts deposited in thwarted modifications to the Settlement Agreement.

[4]The agreement also called for stand by letters of credit to secure the payment of future monthly installments.

It is the Court's intention, to the greatest extent possible, to effectuate the overall scheme of the parties as reflected in their settlement agreement, notwithstanding the difficulties they have encountered (or created for themselves) in carrying out that agreement. The breakdowns in execution of the agreement to date are attributable in varying degrees to both parties and have been the result of an extraordinary level of mistrust between the parties. Typical credit and security arrangements have not been sufficient to allow them to carry what should have been a routine commercial transaction. Despite these breakdowns and the passage of time, it is still possible for the parties to obtain the major benefits contemplated under the agreement. Should either party fail to carry of its role as directed herein, the settlement should be considered breached and the contingent remedies set forth below should apply.

Nikitin testified that the four pieces of equipment retain substantial value to him and that he remains desirous of taking possession of them. To that end, he should pay the balance of the agreed $505,000 not already paid or being held in trust and receive the equipment. Should he fail to make that payment, Optowave should be allowed to retain the equipment (subject to an appropriate credit) and get a modified judgment for $505,000 (less payments and credits) plus an award for the spoliation finding. In either event, Mr. Myers would be obligated to pay over all sums he is holding in partial or full satisfaction of the judgment.

For the reasons stated on the record and to resolve the matter between the parties, it is respectfully **RECOMMENDED** that the parties be **ORDERED** to do the following:

1. (A) Nikitin must deposit **$243,125** in the trust account of Ernest Myers, Esq. by a date certain, not to exceed **ten days** from the entry of any order adopting this Recommendation; (B)

Optowave must then immediately tender the equipment in suitable condition for packing and shipping; and (C) thereafter Mr. Myers must pay the balance of the $505,000 from his trust account.

2. If, after Nikitin has timely deposited **$243,125** in the trust account of Ernest Myers, Esq., Optowave fails to make the equipment available to Nikitin within five days from notice that the balance of funds is available in trust, Nikitin will be entitled to a credit of **$325,000**[5] against the Amended Judgment. Doc. No. 155.

3. If Nikitin fails to deposit **$243,125** in the trust account of Ernest Myers, Esq. by the date certain set by the District Court, then Nikitin will be entitled to a credit against the judgment of **$200,000**;[6] however, in that instance Nikitin will be determined to have breached the Settlement Agreement and will be liable for Attorneys' Fees for Spoliation in the amount of **$64,465** (as set forth below), thus his credit against the Amended Judgment will be only **$135,535**.

## *II. ATTORNEYS' FEES FOR SPOLIATION*

Consideration of the following motion is conditional. If the parties' settlement can be rescued and executed, the claim for fees from spoliation is moot. However, so that the parties may be fully aware of the consequences of their actions or inactions going forward and so all issues can be resolved without further proceedings, the following Report and Recommendation is provided with respect to the issues presented as to spoliation.

---

[5]This is the current value Nikitin placed on the equipment during his testimony.

[6]As noted above, the equipment is more valuable to Nikitin than it is to Optowave. The $280,000 value set in the settlement agreement presumed prompt posting of letters of credit and monthly payments.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF OPTOWAVE CO., LTD'S RENEWED AND REFILED MOTION FOR ATTORNEYS' FEES AND COSTS AGAINST DEFENDANT DMITRI G. NIKITIN ON THE ISSUE OF SPOLIATION (Doc. No. 187)** |
| **FILED:** | **June 28, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

In the course of discovery, Plaintiff sought to compel written discovery, particularly electronic documents and emails regarding the Contract, in addition to interrogatory responses, from Defendant Nikitin. Following an evidentiary hearing on the issue, the Court determined "that Nikitin allowed relevant evidence to be destroyed in bad faith." The Court determined that Nikitin should be sanctioned and that Plaintiff should assert its request for attorneys fees and costs on the issue of spoliation at the conclusion of the case before the District Judge. Following the conclusion of the appeals process, Optowave now seeks reimbursement for attorneys' fees in the amount of $101,731.81, which it contends were reasonably and necessarily incurred in the spoliation issue against Defendant. Doc. No. 187. Nikitin contends that a reasonable attorney's fee for the spoliation of evidence is a sum between $15,000 and $20,000. Doc. No. 192.

**Background of Spoliation Issues**

On May 9, 2005, counsel for `Optowave sent a demand letter to PTG which included a notice regarding the non-destruction of computer files, warning that PTG could be liable for spoliation of evidence and subject to sanctions for deleting or altering files. In the course of discovery, Plaintiff sought to compel written discovery, particularly electronic documents and emails regarding the Contract, in addition to interrogatory responses, from Defendant Nikitin. Following oral argument, and an agreement for Nikitin to produce most of the documents sought by Plaintiff, the Court set for

hearing the issue of spoliation of certain internal emails between Nikitin and his employees, and the matter came on for hearing on August 1, 2006. *See* Doc. Nos. 51 (reserving issue of spoliation), 68; *see also* Doc. No. 54 (Nikitin's Response to Supplemental Motion to Compel Discovery).

Optowave alleged that Nikitin intentionally allowed the destruction of internal emails, particularly those from former PTG employee Stefan Tudor, which would have supported Optowave's position that the Contract was drafted by PTG and incorporated Optowave's acceptance test specifications into the contract specifications. The evidence at the hearing showed that despite written warnings not to destroy relevant evidence, Nikitin allowed crucial electronic evidence to be destroyed and failed to produce it. The Court found that Nikitin was responsible for the spoliation of emails which would have shown Optowave's proposed specifications were incorporated in the contract.

By its opinion and order entered on April 4, 2007, the District Court awarded to Plaintiff judgment against Defendant Nikitin, in the amount of $387,475.00 along with costs to be taxed in accordance with law. The Court's opinion also referred to this Court for determination the amount of Optowave's costs and reasonable attorney's fees arising from the spoliation issue. Doc. No. 145. Final judgment in favor of Optowave and against Dimitri G. Nikitin was entered by the Clerk on April 5, 2007, reserving jurisdiction to award Optowave its costs and reasonable attorneys' fees for the spoliation issue. Doc. No. 146. The appeal process in the Eleventh Circuit concluded on June 3, 2008. Doc. Nos. 185, 186 (correcting style).

**ANALYSIS**

It is the general rule in this country that, unless Congress provides otherwise, parties are to bear their own attorney's fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) (tracing the origins and

development of the American Rule)). In this case, attorney's fees were awarded to Optowave as a sanction for Nikitin's spoliation.

The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). This burden includes supplying the court with specific and detailed evidence from which it can determine the reasonable hourly rate; maintaining records to show the time spent on the different claims; and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). "A well-prepared fee petition also would include a summary, grouping time entries by the nature of the activity or state of the case." *Id*. While the District Court may benefit from evidence of prevailing views among practitioners on the reasonableness of such fees, generalized statements that time spent was reasonable or unreasonable are not particularly helpful and are not entitled to much weight. *Norman*, 836 F.3d at 1301. Proof from fee opponents should be precise. *Id*. at 1303.

In formulating a fee that is reasonable, federal courts employ the familiar lodestar approach. *See Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc*., 656 F. Supp. 826 (M.D. Fla. 1987) (awarding fees in copyright case using the lodestar). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Factors to be considered when setting a fee include: 1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent;

7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see Cable/Home Communication Corp. v. Network Production*, 902 F.2d 829, 853 n.37 (11th Cir. 1990).

Although the district court must examine each of the Johnson factors, it is not obligated to adjust a fee upward or downward in every instance where one or another of the factors is found to be present. *Marion v. Barrier*, 694 F.2d 229, 231 (11th Cir. 1982). Rather, *Johnson* suggests a balancing process, with the trial judge remaining responsible for the discretionary functions of assessing the weight to be given to each factor and the appropriate adjustments to make in the fee. *Id.*

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985). The reasonableness of the rate charged is determined by its congruity with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984). In fact, the going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *see Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers,* 34 F.3d 1148 (2d Cir. 1994) (prevailing community court should use in setting the lodestar is the district in which the court sits).

An applicant may meet this burden to show the reasonable rate by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates.

*Norman*, 836 F.2d at 1299. The court may also use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303; *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 278 F.Supp. 2d 1301, 1310 (M.D. Fla. 2003); *Scelta v. Delicatessen Support Services*, 203 F.Supp. 2d 1328, 1331 (M.D. Fla. 2002). In exercising its discretion, this Court must consider "the prevailing marketplace rates for the type of work and the experience of the attorneys." *Cabrera v. Jakabovitz*, 24 F.3d 372, 392 (2d Cir. 1994). Services of paralegals and law clerks are also compensable at market rates. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288-89 (1989); *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996); *American Charities*, 278 F.Supp.2d at 1310.

In cases in which the documentation is inadequate, the "district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Norman*, 836 F.2d at 1303. Because the Court is itself an expert on attorney's fees, it may consider its own knowledge and experience and award attorney's fees based solely on affidavits in the record. *Id.* Excessive, redundant, and unnecessary hours should be excluded from a fee award. *Id.* at 1301 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The Supreme Court requires fee applicants to exercise billing judgment which means that the applicant should "exclude from his fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours that would be "unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.3d at 1301; *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Excluding excessive hours means that a lawyer may not be

compensated for activities which would not be billed to a client intent on vindicating its rights. *Id.* Exclusions for excessive hours are ultimately left to the discretion of the District Court. *Id.*

Having set forth these standards, the United States Supreme Court, however, expects that a request for attorney's fees will not result in a second major litigation, and that ideally the litigants will settle the amount of the fee. *Hensley v. Eckerhart*, 461 U.S. 434, 437 (1983); *Thompson v. Pharmacy Corp. of America, Inc.*, 334 F.3d 1242, 1245 (11th Cir. 2003) (Lawyers should not be compensated for turning the litigation about attorney's fees into a "second major litigation."). Justices Brennan, Marshall, Blackmun, and Stevens characterized post-judgment litigation over attorneys fees and related appeals as "one of the least socially productive types of litigation imaginable." *Id.* at 442, 103 S.Ct. 1933 (concurring in part and dissenting in part); *Association for Disabled Americans, Inc. v. Integra Resort Management, Inc.*, 385 F.Supp. 2d 1272, 1286 (M.D. Fla. 2005). The Court now turns to the calculation of a reasonable fee.

**Hourly rate**

Optowave seeks attorneys' fees of $101,732 allegedly arising out of the spoliation issue against Nikitin. Nikitin responds that a portion of the legal fees sought are duplicative, not reasonable or necessary to represent Optowave on the spoliation issue, and will stipulate to attorneys' fees totaling only $20,000. Nikitin contends that a reasonable rate[7] for Mr. Foster (35 years of experience) is $325 per hour, for associates including Mr. Choo or Ms. Salzman (6th year associate) is $200 per hour, and for paralegal or law clerk work is $100 per hour.

The hourly rates suggested by Nikitin are in line with reasonable rates awarded in this Court for work accomplished by Orlando attorneys of comparable experience in business litigation matters.

---

[7]The Court has discounted the 0.3 hour of time incurred by now-sitting Magistrate Judge Greg Kelly, appointed to the Court subsequent to the matter at issue in the case.

*See Securities and Exchange Commission v. Digges*, Case No. 6:06-cv-137-Orl-31DAB (awarding receiver and senior litigator compensation at $325-300/hour, senior associate rate of $175/hour, and paralegal rate of $90-95/hour); *Corwin v. Walt Disney World Co.*, Case No. 6:05-cv-1083-Orl-19DAB (awarding twenty-three year attorney rate of $300/hour, senior associate $200/hour, and paralegals/summer associates a rate of $90/hour). However, Mr. Choo did not indicate how many years he has been in practice; although he did state he is a member of the New York bar and he has represented Optowave as its general counsel since November 2004. Doc. No. 153-2; *see also* Doc. No. 28. The Court will award him a senior associate rate of $175/hour.

**Number of hours**

Nikitin argues, based on the affidavit of his previous counsel James Lavinge, that Optowave's hours are overstated by a factor of five. Optowave seeks reimbursement for more than 500 hours of attorney and paralegal/law clerk time incurred beginning in February 6, 2006[8] when Robert Choo first raised discovery issues with Nikitin's counsel. Doc. No. 153-2 at 23. Two separate firms have submitted time records, from the local firm of Akerman Senterfitt, and Robert Choo, Esq.

Unfortunately, Optowave makes no mention of the exercise of any billing judgment in its Motion for Fees based on the submissions from the two firms; Optowave is charged with the burden of showing the reasonableness of the hours that were billed and, accordingly, is charged with proving that it exercised billing judgment. *See Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987). Because of the voluminous nature of the bills presented, the Court is not required to review each entry to determine reasonableness. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (when fee petition and supporting documentation are voluminous, hour by hour analysis unnecessary); *Lang v.*

---

[8]One isolated, earlier entry is from April 23, 2005 for drafting of the "Non-Destruction Notice" by Ms. Salzman. Doc. No. 153-2 at 4.

*Reedy Creek Improvement Dist.*, 1997 WL 809200, *3-4 (M.D. Fla. 1997). Rather, the Court has reviewed the affidavits, exhibits and testimony and has carefully considered the evidence in light of the principles set forth in *Hensley* and its progeny.

Like any litigant, Optowave is free within its means to employ whichever and how many attorneys it wishes and to give them free rein in devoting resources in pursuing an action. When seeking to shift the cost of such a strategy to a losing adversary, however, those choices are subject to scrutiny, and the fee to be shifted may be more limited than the amount reasonably billed to and accepted by a client.

The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment. *See Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (reducing the award 13% where the billing records were completely devoid of any hours written off and were incomplete); *Walker v. U.S. Dept. of Housing and Urban Development,* 99 F.3d 761, 770 (5th Cir. 1996) (awarding 15% as the appropriate reduction for lack of billing judgment); *United States of America, ex rel. Albert D. Campbell v. Lockheed Martin Corporation*, Case No. 6:95-cv-549-Orl-28DAB, Doc. No. 559 (Report and Recommendation re: attorney's fees; reducing fees by 15% for overstaffing).

Of the two firms representing Optowave, it appears that Akerman Senterfitt has reasonably and appropriately limited its submitted hours to tasks related to: the Motion to Compel (Doc. No. 36) which first identified the missing Tudor emails; the response to Nikitin's Motion for Protective Order; the Supplement to the Motion to Compel (Doc. No. 42) which homed in on the spoliation issue; preparation for and attendance at the Spoliation hearing on August 1, 2006; preparation and attendance at Nikitin deposition (Doc. No. 80); reviewing Nikitin's submission following Spoliation

hearing (Doc. No. 75); the Motion for Clarification of the Spoliation Order (Doc. No. 91); and preparation of the Motion for Fees (Doc. No. 157). Although not explicitly discussed in the Motion for Fees, it appears to the Court that the submission from Akerman Senterfitt has been winnowed with an eye toward exercising billing discretion. For instance, Mr. Foster has not submitted any hours for depositions at which both he and Mr. Choo were present.

Unfortunately, a review of Mr. Choo's submissions does not reflect that he has properly exercised billing discretion in compiling his supporting submission. Mr. Choo's billings include time for numerous trips between Orlando and his residence in Boston to attend hearings that were attended by Mr. Foster, as well as a trip to Korea, which he presumably would have made in the course of the litigation regardless of any issues on spoliation; total travel time is approximately 81 hours. The Court agrees with Nikitin's contention that Mr. Foster in a solo capacity could have ably represented Optowave; certainly there was not shortage of business litigators in the area to do so, thus, Nikitin should not bear the cost of Mr. Choo's travel time or expenses.

Mr. Choo also includes 26.5 hours related to the deposition of Eugene Kayzerman, which was important to the overall case, but was not directly related to the spoliation issue; these hours will be deducted. Mr. Choo additionally lists 26 hours of time that relate to drafting or reviewing of discovery broadly, and do not relate specifically to the spoliation issue or Stefan Tudor's emails/hard drive that was destroyed. The Court discounts these hours by 50%, for a reduction of 13 hours. Mr. Choo submits all of his hours spent preparing and taking three separate depositions of Nikitin, only one of which was ordered in connection with the spoliation issue, presumably some – but not all – of the other two depositions related to negotiation of the contract at issue and Stefan Tudor's communications; the Court will reduce the time by 5 hours.

After a thorough review of Optowave's counsel's fees in light of the issues identified above, and taking all of the various issues set forth above into account, the Court finds the following to be an appropriate award for attorneys' fees.

| ATTORNEY/ PARALEGAL | HOURS SOUGHT | DEF. STIP. HOURS | HOURS AWARDED | RATE SOUGHT | DEF. STIP. RATE | RATES AWARDED | AMOUNTS AWARDED |
|---|---|---|---|---|---|---|---|
| James Foster, Esq. 35 years | 44.3 | 40 | 44.3 | $419 | $325 | $325 | $14,397.50 |
| Robert Choo, Esq. | 322.2 | 20 - total | 196.7 | $200 | $200 | $175 | 34,422.50 |
| Carolyn Salzman, Esq. - 6 years | 23.9 | for both | 23.9 | $220 | $200 | $175 | 4,182.50 |
| Taylor Ford, law clerk | 40.8 | 0 | 40.8 | $109 | $100 | $90 | 3,672.00 |
| Paralegal | 77.3 | 30 | 77.3 | $115 | $100 | $90 | 6,957.00 |
| **TOTAL** | 508.5 | 90 | 383 | | | | **$63,632.00** |

**Costs**

Optowave also seeks reimbursement of costs of $3,355, which Nikitin opposes. Optowave seeks $1,172.50 for expert witness forensic costs incurred preparing for, attending, and testifying at the spoliation hearing by an Akerman Senterfitt information technology specialist, Michael Snetzko. Optowave seeks a rate of $125/hour for 9.7 hours; the Court will allow a $90/hour rate, for total costs of $833 ($873 -$40 already submitted in the previous bill of costs). Doc. Nos. 187; 153-2 at 32.

Optowave also seeks reimbursement of $2,182.09 for Mr. Choo's travel costs related to the motion and evidentiary hearing, which the Court denies for the reasons stated above.

## *CONCLUSION*

It is respectfully **RECOMMENDED** that, should the contemplated payment of the balance due under the settlement agreement fail to be made, Optowave's Renewed Motion for Attorneys' Fees

and Costs Against Defendant Dmitri G. Nikitin on the Issue of Spoliation (Doc. No. 187) be **GRANTED** in the amount of **$63,632.00** for attorneys' fees and **$833** for costs.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 21, 2008.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy